HALE *v.* CITIZENS BANK OF MONETTE.

Opinion delivered February 2, 1914.

BILLS AND NOTES—NOTE PAYABLE TO MAKER'S ORDER—BONA FIDE HOLDER.—Appellant made a note payable to his own order and endorsed it and delivered it to A. Without endorsing it, A. sold the note to appellee. *Held*, an endorsement by A. was not necessary to constitute appellee a *bona fide* holder in due course of business.

Appeal from Craighead Circuit Court, Lake City District; *J. F. Gautney,* Judge; affirmed.

*Lamb & Caraway,* for appellant.

1.   The note was voidable in the hands of the insurance company.

If it be said that appellant was relying upon Blankenship, and not upon the agents, still Blankenship was working with the agents, in their behalf, and to a great extent in their presence and hearing, and the insurance company was bound by the statements he made. 14 Am. & Eng. Enc. of L., § § 155, 156; 66 N. Y. 562-567; 70 N. E. 27-29; 16 Cyc. 1025; *Id.* 1018; 20 Ark. 216-225; 97 Ark. 265-271.

Where shares of stock are on the market and being sold by brokers and on stock exchanges, in the regular course of business, the value of each share is the amount for which a purchase can be made, and no share is worth more than its current quotation. As to such stock the statement of its value or worth implies that shares are being sold and have been sold for that amount, and such statement constitutes a material representation as to an existing fact. Where they are false and fraudulent and are relied upon, they will avoid the contract. 30 Atl. 125; 27 Vt. 227-231; 46 Pac. 633; 41 N. W. 881.

2. The bank was not a *bona fide* purchaser. The note was not purchased in the usual course of business, or without notice of an existing defense.

Where the maker of a note has shown that it was procured from him by fraud, the burden is upon the holder to show that he is an innocent purchaser for value. 7 Century Digest, Bills and Notes, § 1683; 48 Ark. 454-458. Appellee did not overcome the presumption against good faith which arose from the proof presented by appellant, and the matter should have been submitted to the jury. 63 N. W. 345; 16 N. W. 220; 54 N. W. 967; 90 Ill. 300; 44 Mo. App. 316.

*Hawthorne & Hawthorne,* for appellee.

Upon the new trial the facts touching the real issues in the case were just the same as when the case was before this court on former appeal. 104 Ark. 388. And the undisputed facts show that the note was purchased in the usual course of business, for full face value, without any knowledge on the part of the cashier, who made the purchase, of any existing defenses thereto, and without notice of any fact that should have put him upon inquiry.

As to representations made by Blankenship, he had acquired his information from statements made to him by the agents of the company and himself believed in its reliability.

"No one can be held liable for a false representation who honestly believed it when made, however false it may be." 38 Ark. 334; 15 L. R. A. (N. S.) 409; 17 *Id.* 240.

The burden was on the appellant to show that the bank had actual knowledge of his defense when it bought the note, or had notice of such facts as would indicate that its purchase thereof amounted to bad faith. 79 Ark. 153; 61 Ark. 87. Misrepresentations, to be fraudulent in law, must be material to the contract, and made by one who knows them to be false, or else, not knowing, asserts them to be true, with the intent to have the other party act upon them to his injury. 97 Ark. 268; 99 Ark. 438; 101 Ark. 95.

HART, J. Appellant prosecutes this appeal to reverse a judgment against him in favor of appellee upon a promissory note. This is the second appeal of the case, and the opinion on the first appeal is reported in 104 Ark. 388, under the style of *Bank of Monette* v. *Hale.* Briefly stated, the facts are as follows:

In the spring of 1909 certain persons representing the Mississippi Valley Life Insurance Company went to the town of Monette and. solicited persons to subscribe to the capital stock of said company. Joe Blankenship was the president of the Bank of Monette and U. O. Ashby was its cashier. Both of them purchased stock in the Mississippi Valley Life Insurance Company and gave their notes therefor. The agents represented that the shares of stock were worth one hundred dollars, and that they would sell them for seventy-five dollars. The agents for the life insurance company met appellant, Hale, in the store of Blankenship and solicited him to buy·some of its capital stock. Both the agents for the life insurance company and Mr. Blankenship represented to him that the stock was worth one hundred dollars a share and that it was being sold at seventy-five dollars per share. Blankenship told appellant that he and Mr. Ashby had each bought $750 of the capital stock of said insurance company, and that he thought the stock would shortly be worth four for one. Blankenship further stated to appellant that if he became dissatisfied with the purchase of the stock he would take it off of his hands. Appellant then purchased some of the stock and executed· therefor a promissory note for $375, due one year after date and payable to himself or order. Appellant executed this instrument on the night of the 1st day of April, 1909, and endorsed his name on the back thereof and delivered it to the agents of the life insurance company in payment of the stock which he had purchased. On the next morning the agents of the life insurance company sold the note to appellee, Citizens Bank of Monette, for its face value; but the note was not endorsed by them. They agreed with Mr. Ashby, the cashier of the bank, to leave the

amount which he paid for the note with the bank until the note became due, and the bank agreed to pay them 4 per cent interest on the deposit. The cashier of the bank also purchased other notes given for stock in the life insurance company on the same terms. On the morning of the second day of April, 1909, appellant went into the office of the Citizens Bank of Monette and told Ashby and Blankenship that he had learned that the stock was of the face value of only twenty-five dollars a share, and that he was dissatisfied with his purchase. Mr. Ashby told him that the agents who had sold him the note had already left town and were on their way to the town of Manila. Appellant urged Mr. Blankenship to take up his note, but the latter refused to do it. Afterward a certificate of stock was sent to appellant by registered mail, which he refused to take out of the postoffice.

The court directed a verdict for appellee, and the case is here on appeal.

It is first insisted by counsel for appellant that the judgment should be reversed because the note was not endorsed by the agents of the life insurance company. It is true we held in the case of *Webster* v. *Carter,* 99 Ark. 458, that one who takes a negotiable note payable to order by delivery merely, and without a written assignment, is not an innocent purchaser, and takes subject to all equities between the original parties; but that rule does not apply where a note is payable to bearer. Randolph on Commercial Paper (2 ed.), vol. 2, § 789. Appellant, who was the maker of the note in the present case, made it payable to himself or order, and endorsed it on the back thereof. In the case of *Scull* v. *Edwards,* 13 Ark. 24, the court held that where one makes a promissory note payable to his own order, and then endorses and delivers it to another, it becomes, in legal effect, a promissory note. Appellant having made the note payable to himself or order, and then having endorsed it in blank and delivered it to the agents of the life insurance company, it became, in effect, a note payable to bearer, and its written endorsement by the agent of the life in-

surance company was not necessary to constitute appellee a *bona fide* holder in due course of business.

The facts, as developed on a retrial of the case, are in no material respect different from those proved on the first trial; and on the former appeal we held that the court should have directed a verdict in favor of the bank. Counsel for appellant urge that the judgment should be reversed because it was shown on a retrial of the case that Blankenship made the same representations to the appellant to induce him to purchase stock in the life insurance company as were made by the agents themselves; but it is not shown that Blankenship knew that these representations were false, or that he made them recklessly, without believing them, and not knowing them to be true. On the contrary, the testimony shows that he had purchased stock for himself and for his son upon these same representations. The undisputed evidence shows that the cashier of the bank purchased the note sued on before he ascertained that the appellant claimed that they were procured through false representations, and that he in no wise participated in the acts of the agents in making the representations to appellant which induced him to purchase the stock. The cashier of the bank himself had purchased stock in the life insurance company upon the same terms and upon the same representations, and there is nothing in the evidence to show that he had any knowledge whatever that such representations were false or that he was in possession of any facts which would lead to such knowledge. It is true that the testimony shows that parties who had purchased stock in the life insurance company afterward sold it for a much less price than they paid for it, but at the time the note sued on was purchased by the bank the cashier did not have knowledge of this fact. The testimony developed on the first trial is fully set out in our opinion on the former appeal.

We have carefully examined the testimony as proved on the retrial of the case, and, as above stated, it is not materially different from that proved on the first trial.

Therefore, the opinion of the court on the former trial becomes the law of the case, and the judgment must be affirmed.